# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00515-CV

---

**Eric Leonard Tucker, Appellant**

**v.**

**Natalia Citlalli Covarrubias Campos, Appellee**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-20-002135, THE HONORABLE DUSTIN M. HOWELL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Eric Leonard Tucker appeals from the district court's order finding that the registration of a foreign child custody determination—the "Provisional Custody Decree rendered by Mexican court on May 14, 2020" (the Mexican Order)—was valid. On appeal, Tucker challenges the district court's order on the ground that he did not have notice or an opportunity to be heard in the Mexico proceeding before the Mexican Order was issued. For the following reasons, we affirm the district court's order.

## BACKGROUND

**Registration of Foreign Child Custody Determination**

To give context to the parties' dispute concerning the registration of the Mexican Order, we briefly outline relevant statutory provisions. In this case, the parties agree that the Mexican Order is a "child custody determination" as defined in the Uniform Child Custody

Jurisdiction and Enforcement Act (the Act). *See* Tex. Fam. Code § 152.102(3) (defining "child custody determination" as "judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child," including temporary and initial orders), (8) (defining "initial determination" as "the first child custody determination concerning a particular child").

As a child custody determination, the Mexican Order is treated under the Act as having been issued by a court of another state. *Id.* § 152.105(a) (stating that state courts should treat foreign country as if it were state of United States), (b) (providing generally that child custody determination made in foreign country "must be recognized and enforced"). "A child custody determination issued by a court of another state may be registered in this state, with or without a simultaneous request for enforcement[,]" by sending documentation to the appropriate Texas state court. *Id.* § 152.305(a); *see Razo v. Vargas*, 355 S.W.3d 866, 870–71 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (describing procedure for registering foreign judgment under section 152.305 of Family Code).

After receiving the required documents to register the child custody determination, the Texas state court files the determination as a foreign judgment and provides notice to specified persons and an opportunity to contest the determination's registration. *See* Tex. Fam. Code § 152.305(b) (requiring court to cause determination to be filed with accompanying documents and to serve notice upon specified persons), (c)(2) (requiring request for hearing to contest registration to be made within 20 days after service of notice). At a contest hearing, the court must confirm the validity of the registered order unless the person contesting its registration establishes: (i) the issuing court did not have jurisdiction; (ii) the order has been vacated, stayed, or modified by a court having jurisdiction to do so; or (iii) "the person

2

contesting registration was entitled to notice, but notice was not given in accordance with the standards of Section 152.108, in the proceedings before the court that issued the order for which registration is sought." *See id.* § 152.305(d); *see also id.* § 152.108 (providing standard for notice to persons outside state).

With this statutory framework in mind, we turn to the circumstances giving rise to the Mexican Order's registration in Texas.

**Mexican Order**

Tucker and Natalia Citlalli Covarrubias Campos (Covarrubias) were married in 2013, and their child was born in 2017 in the United States. After the child's birth, the child lived for periods of time in Mexico, where Covarrubias's family lived, and Travis County, but the child lived primarily in Mexico in the year preceding the parties' separation in 2020. In April 2020, Tucker filed a petition for divorce and suit affecting the parent-child relationship in Travis County. Among his requested relief, Tucker sought an ex parte temporary restraining order against Covarrubias. *See* Tex. R. Civ. P. 680.

On May 15, Covarrubias filed a petition in Mexico concerning custody of their child, and on May 18, the Mexican Court issued the Mexican Order. The Mexican Order "concludes that the urgency and need for the requested measure [was] proven"; recites Covarrubias's evidence;[1] gives Covarrubias "as an interim measure, exclusive provisional custody of the minor [child]" "with immediate effects"; and requires Tucker "to hand over the

---

[1] The recited evidence in the Mexican Order included that Covarrubias declared under oath that the last time she allowed Tucker to see the child, he did not give the child back to her; Tucker "[had] unjustifiably denied her contact with [the child]"; "he [had] an aggressive and negligent behavior with [the child]"; and "he suffer[ed] from various psychological pathologies that [could] put at risk the life and integrity of [the child]."

3

minor [child] to [Covarrubias]." The order, however, states that its "provisional effects will inevitably be subject to the results of the main trial" and that it could be modified. It also required that Tucker be served with its contents and set his deadline to contest the order to be 19 days from the date of service. When the Mexican Order was issued, Tucker was unaware of the proceeding in Mexico and had not been served. He learned of the Mexican Order on May 22 when his attorney received a copy of it from opposing counsel in the divorce proceeding in Travis County.

In July, Covarrubias sought to register the Mexican Order in Travis County and filed certified copies of the order in Spanish and English with the Travis County District Clerk. *See* Tex. Fam. Code § 152.305. After Tucker was notified that the Mexican Order had been filed in Travis County, he timely requested a hearing to contest the validity of the registration, and the district court held a hearing on his contest in September. Prior to the hearing, the district court had determined that Mexico was the child's home state, *see id.* § 152.201(a)(1) (explaining when state is home state of child), and at the time of the hearing, Covarrubias had possession of the child.

At the hearing, Tucker and his attorney testified, and Covarrubias's witness was her attorney in the Mexican proceeding. Tucker disputed the factual allegations that are recited in the Mexican Order and testified that although he became aware of the Mexican proceeding after the Mexican Order had issued, he had not been officially served and had not participated in that proceeding. Tucker's attorney testified that he first learned of the Mexican proceeding in May after the Mexican Order had issued and that Tucker still had not been served, but the attorney confirmed that Tucker also had sought an ex parte temporary restraining order among his requested relief in his petition for divorce and suit affecting the parent-child relationship in

4

Travis County and that he had retained a lawyer from Mexico to provide information about Mexican law. The attorney from Mexico who testified on Covarrubias's behalf explained that a judge in Mexico signed the Mexican Order after sworn statements and evidence were presented, that the order was issued ex parte, that the attorney was in the process of having Tucker served through the Ministry of Foreign Relations in Mexico and the Consulate in Texas, and that Tucker was entitled to request a hearing in the Mexican proceeding to contest the order.

At the conclusion of the hearing, the district court advised the parties that it was granting the request to register the Mexican Order and thereafter signed the order on the validity of registration of a foreign child custody determination. The court found that the Mexican Order's registration was valid and denied Tucker's contest. The district court also entered findings of fact and conclusions of law. The district court found that the Mexican Order was "an ex parte emergency order" concerning the parties' minor child, that it was a "'Child Custody Determination' as defined by section 152.102(3) of the Texas Family Code," and that it had not been vacated, stayed, or modified. The court also found that Tucker did not have actual or constructive notice of the proceeding in Mexico prior to the Mexican Order being signed, that "no evidence was presented that [Tucker] was entitled to notice of the proceeding prior to the Mexican Order being signed," and that Tucker was not entitled to notice of the proceeding prior to the order being signed. The court's conclusions of law included that the court issuing the Mexican Order had jurisdiction to do so; that Tucker was not entitled to notice of the Mexican Order prior to it being signed; that Tucker, as the party resisting registration, had the burden of proof; and that unless demonstrated otherwise in an evidentiary hearing, it was presumed that Mexican law was the same as Texas law.

5

## ANALYSIS

In his three issues, Tucker does not dispute or challenge the district court's findings that the issuing court in Mexico had jurisdiction to issue the Mexican Order and that the order had not been vacated, stayed, or modified. *See id.* § 152.305(d)(1)-(2) (stating means for contesting registration of child custody determination based on lack of jurisdiction or changes to order). Tucker's issues challenge the district court's registration of the Mexican Order based on his lack of notice of the Mexican proceeding before the Mexican Order was issued. *Id.* § 152.305(d)(3) (stating means for contesting registration based on lack of notice).

*Standard of Review*

"When a matter involving both factual determinations and legal conclusions is decided by the trial court, we review the trial court's decision for an abuse of discretion." *Razos*, 355 S.W.3d at 870. "A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when it acts without any reference to guiding rules or principles." *In re Thetford*, 574 S.W.3d 362, 374 (Tex. 2019) (orig. proceeding) (quoting *In re Meador*, 968 S.W.2d 346, 353 (Tex. 1998) (orig. proceeding)).[2]

Tucker's issues also involve statutory construction, a question of law that we review de novo. *See First Am. Title Ins. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). Our

---

[2] In the context of the Uniform Foreign-Country Money Judgments Recognition Act, this Court reviewed de novo a trial court's order granting a motion for nonrecognition of a foreign judgment. *See Naves v. National Western Life Ins.*, No. 03-08-00525-CV, 2009 Tex. App. LEXIS 7153, at *3–4 (Tex. App.—Austin Sept. 10, 2009, pet. denied) (mem. op.). Applying a de novo standard of review, our disposition would be the same. *See Mariles v. Hector*, No. 05-16-00814-CV, 2018 Tex. App. LEXIS 6106, at *17 (Tex. App.—Dallas Aug. 6, 2018, no pet.) (explaining that under either standard of review, de novo or abuse of discretion, we defer to trial court's credibility determinations and resolutions of conflicting evidence (citing *In re I.I.G.T.*, 412 S.W.3d 803, 806 (Tex. App.—Dallas 2013, no pet.))).

primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). "We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We also "read the statute as a whole and interpret it to give effect to every part." *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011) (quoting *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). With these standards in mind, we turn to Tucker's issues.

*Due Process*

In his first issue, Tucker contends that the district court erred by registering the Mexican Order "in violation of [his] due process rights, as he was never provided a fundamental right to be heard or contest the allegations in the Mexican proceeding."

"[D]ue process requires that no other jurisdiction shall give effect, even as a matter of comity, to a judgment elsewhere acquired without due process." *Ashfaq v. Ashfaq*, 467 S.W.3d 539, 541 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Griffin v. Griffin*, 327 U.S. 220, 228 (1946)); *In re E.H.*, 450 S.W.3d 166, 172 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see* U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19; *Fuentes v. Zaragoza*, 555 S.W.3d 141, 154 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (explaining that trial court may decline to recognize foreign judgment obtained without due process). "At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Scally v. Texas State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 447 (Tex.

7

App.—Austin 2011, pet. denied) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *University of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995)). But determining "[w]hat process is due is measured by a flexible standard that depends on the practical requirements of the circumstances." *Than*, 901 S.W.2d at 930 (citing *Mathews*, 424 U.S. at 334).

On appeal, Tucker does not challenge the district court's conclusion that the court issuing the Mexican Order had jurisdiction to do so or its finding that the Mexican Order was issued as an "emergency order" concerning the parties' minor child. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) (explaining that unchallenged findings of fact are binding on appellate court unless contrary is established as matter of law or there is no evidence supporting finding); *In re E.H.*, 450 S.W.3d at 176 (same); *see also Sanders v. Merritt*, No. 03-17-00085-CV, 2017 Tex. App. LEXIS 7207, at *9 (Tex. App.—Austin Aug. 2, 2017, no pet.) (mem. op.) (deferring to unchallenged findings that were supported by some evidence). The evidence also showed that Tucker had actual notice of the Mexican Order within a few days after it was issued and was aware that he could contest it in that proceeding. The judge in the Mexican Order also recited the facts underlying the judge's conclusions that the order was necessary and expressly provided that the order was provisional pending trial, that its substance was subject to challenge and modification in the interim, and that Tucker was entitled to the opportunity to contest its substance. *See Scally*, 351 S.W.3d at 447.

As recognized by Tucker in his request for an ex parte temporary restraining order in the Travis County divorce proceeding, Texas law allows these types of orders without violating due process. *See* Tex. R. Civ. P. 680 (explaining when request for temporary restraining order may be granted without notice); *see, e.g.*, Tex. Fam. Code §§ 83.001 (stating

8

requirements for issuing temporary ex parte protective order), 88.003(d)(4)(B) (addressing judicial enforcement of foreign protective order and stating that foreign ex parte protective order is valid if respondent was given reasonable notice and opportunity to be heard within reasonable time after order rendered); *see also Vince Poscente Int'l, Inc. v. Compass Bank*, 460 S.W.3d 211, 219 (Tex. App.—Dallas 2015, no pet.) (stating that "[u]nless a party requests the court to take judicial notice of or introduces proof of another state's law, or the court on its own motion takes judicial notice of another state's law, the court presumes the other state's law is the same as Texas law" (citing *Keene Corp. v. Gardner*, 837 S.W.2d 224, 227 (Tex. App.—Dallas 1992, writ denied))); *PennWell Corp. v. Ken Assocs.*, 123 S.W.3d 756, 763 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (explaining that "trial court was left to presume that Japan's laws were the same as Texas's laws on that issue"). Tucker did not present evidence that permissible ex parte temporary orders under Texas law were not permissible under Mexican law.

On this record, we conclude that Tucker has not established that the district court's order violated his due process rights when it found that the registration of the Mexican Order was valid. We overrule Tucker's first issue.

*Section 152.205(b)*

In his second issue, Tucker argues that the district court erred by registering the Mexican Order because notice and an opportunity to be heard were a prerequisite to the application of the provisions of chapter 152 of the Family Code. As support, Tucker cites section 152.205(b) which states that the Act "does not govern the enforceability of a child custody determination made without notice or an opportunity to be heard." Tex. Fam. Code § 152.205(b).

9

The plain language of section 152.205(b), however, confines its scope to "the enforceability of a child custody determination," as compared with the registration of one. *See Pochucha*, 290 S.W.3d at 867 (explaining that primary concern in construing statute is express statutory language). Under the Act, the enforcement of a child custody determination is distinct from its registration. *See* Tex. Fam. Code §§ 152.305(a) (authorizing child custody determination issued by court of another state to be registered in state, "with or without a simultaneous request for enforcement"), (c)(1) (explaining that "registered determination is enforceable as of the date of the registration in the same manner as a determination issued by a court of this state"), .306 (addressing enforcement of registered determination), .308 (addressing expedited enforcement of registered determination). Thus, even if we assume that section 152.205(b) is applicable to the enforcement of the Mexican Order in Texas, it does not prevent its registration.[3]

Applying the plain language of section 152.205(b), we conclude that it does not support Tucker's position that the district court erred when it registered the Mexican Order. *See Scott*, 309 S.W.3d at 930. On this basis, we overrule Tucker's second issue.

---

[3] As support for his second issue, Tucker cites authorities from other states, but our analysis primarily rests upon the interpretation of Texas statutes. Further, even if his cited authorities were relevant, we find them factually distinguishable. *See, e.g.*, *Cochran v. Lindeman (In re Sophia G.L.)*, 890 N.E.2d 470, 486 (Ill. 2008) (in context of custody dispute between parents and grandparents, affirming denial of registration of other state's child-custody determination awarding child's grandparents temporary custody and ordering child "be immediately brought" to other state); *Arkansas Dep't of Human Servs. v. Cox*, 82 S.W.3d 806, 811–12 (Ark. 2002) (stating that Florida order was void where Florida did not have jurisdiction because Arkansas was child's home state and refusing to enforce ex parte order from Florida to take child into custody).

*Section 152.108*

In his third issue, Tucker argues that the district court erred by registering the Mexican Order because he was never provided with notice as required by section 152.108. *See* Tex. Fam. Code § 152.108.

The plain language of section 152.305(d)(3), however, does not require compliance with the notice standards under section 152.108 unless the person contesting registration met his burden to establish that he was "entitled to notice" in the court proceeding where the order was issued. *See id.* § 152.305(d)(3) (providing that court should not confirm registered order when "the person contesting registration establishes that . . . [he] was entitled to notice, but notice was not given in accordance with the standards of Section 152.108, in the proceedings before the court that issued the order for which registration is sought"). Tucker does not dispute the district court's conclusion that the court that issued the Mexican Order had jurisdiction to do so, the district court found that Tucker was not entitled to notice in the Mexican proceeding prior to the Mexican Order being issued, and Tucker has not cited evidence that would meet his burden to establish that he was entitled to notice under Mexican law. *See Ashfaq*, 467 S.W.3d at 542 (explaining that Texas law treats foreign law as fact issue and that party relying on foreign law must strictly plead and prove). The district court's findings included that the Mexican order was an "ex parte emergency order," that no evidence was presented that Tucker was entitled to notice of the proceeding before the Mexican Order was signed, and that he was not entitled to notice before the order was signed.

Tucker also cites section 152.205(a) to support his position that he was "entitled to notice" but that provision addresses the required notice before a child custody determination "is made under this chapter in this state." *See* Tex. Fam. Code § 152.205(a). The Mexican

11

Order, on its face, was not made "under this chapter in this state" and, additionally, Tucker's own pleadings in the divorce proceeding recognize that Texas law allows ex parte temporary orders. On this record, we conclude that Tucker did not meet his burden to establish that he was "entitled to notice" in the Mexican proceeding prior to the judge issuing the Mexican order and, thus, that he did not establish that the notice provisions of section 152.108 prohibited the district court from confirming that the registration of the Mexican order was valid.[4]  *See id.* § 152.305(d)(3).  We overrule Tucker's third issue.

## CONCLUSION

Having overruled Tucker's issues, we affirm the district court's order.

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Kelly

Affirmed

Filed:   August 13, 2021

---

[4] As support for his third issue, Tucker cites an unpublished California case, but even if it were relevant to our analysis, we find that case to be factually distinguishable. *See Diaz v. Villalobos*, No. D070434, 2017 Cal. App. Unpub. LEXIS 4184, at *1–2 (4th Dist. June 19, 2017). In the context of a father's suit seeking to have his children returned to Mexico under the Hague Convention on the Civil Aspects of International Child Abduction at a time when they "were well settled in California," the California appellate court reversed the trial court's order "registering/enforcing" a Mexican order that the father obtained without providing the mother with notice until after the order was issued. The order temporarily prevented the mother from taking the children out of Mexico and set the father's visitation schedule. In contrast, Covarrubias had possession of the child at the time of the September hearing, and Mexico, as the child's home state, is the court with jurisdiction over the parties' child custody dispute. *See* Tex. Fam. Code § 152.201 (describing standards for determining child's home state).